IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 11-22251-CMB |
| | ) | |
| **CIPRIAN LTD.,** | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **CIPRIAN LTD.** and | ) | |
| **NATALIE LUTZ CARDIELLO,** | ) | |
| **TRUSTEE,** | ) | Adv. No. 11-02589-CMB |
| | ) | |
| Plaintiff, | ) | Adv. Doc. No. 1 |
| | ) | |
| v. | ) | |
| | ) | |
| **OXFORD DEVELOPMENT COMPANY** | ) | |
| **GRANT STREET, L.P.,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The matter before the Court is the Chapter 7 Trustee's Complaint to Determine Secured Status Pursuant to 11 U.S.C. §506 and to Avoid a Preference Pursuant to 11 U.S.C. §547 ("Complaint").[1] The Defendant, Oxford Development Company/Grant Street, L.P. ("Oxford"), is a creditor of the Debtor and was the Debtor's landlord. The Trustee ("Plaintiff") contends that Oxford's security agreement did not include the Debtor's ownership of a Pennsylvania Liquor

---

[1] The Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(F),(K), and the Court will enter final judgment in this adversary proceeding. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

1

Control Board Restaurant Liquor License ("Liquor License"), because the Liquor License was not specifically named as collateral in the security agreement. While the Plaintiff contends that failure to identify the Liquor License specifically by license number is a fatal flaw to creation of a valid lien, Oxford alleges that the Liquor License is adequately identified as it falls within the category of "general intangibles."  In addition, the Plaintiff alleges that an execution lien obtained by Oxford within the ninety-day period prepetition is avoidable as a preference. Oxford contends that the Plaintiff is unable to establish the requisite elements of a preferential transfer. For the reasons expressed herein, this Court finds that (1) the language of the security agreement is sufficient to include the Liquor License within the category of "general intangibles" and (2) the Plaintiff has not met her burden of establishing the elements of a preferential transfer.

### I.    Stipulated Facts

The facts are undisputed. The parties to this proceeding filed a Stipulation of Facts on January 30, 2012. Accordingly, the facts as stipulated are incorporated herein as follows:

1. This case was commenced on April 8, 2011, by the filing of a voluntary petition under Chapter 7 of the Bankruptcy Code.
2. The Court has jurisdiction over this matter under 28 U.S.C. §1334.
3. An Adversary Action was commenced by the filing of a Complaint to Determine Secured Status Pursuant to 11 U.S.C. §506 and to Avoid Preference Pursuant to 11 U.S.C. §547 on November 8, 2011.
4. Oxford Development Company/Grant Street, L.P. ("Oxford") is a creditor of Debtor, Ciprian Ltd. ("Debtor").
5. On or about September 12, 2006, the parties executed a Lease (hereinafter the "Lease") whereby Oxford leased to Debtor the premises known as Unit No. R-320-325 consisting of approximately 7331 square feet of rentable area located on the 3rd Level of the Oxford Centre Building and Unit No. R-40 consisting of

approximately 300 square feet of rentable area in the Plaza Level of the Oxford Centre Building (the "Premises").

6. Pursuant to Article 30 of the Lease, Debtor granted Oxford a security interest in, *inter alia*, all inventory; all items of machinery, equipment, parts, accessories and attachments; all fixtures, trade fixtures and furniture; all leasehold improvements; and all books, records, invoices, contract rights, chattel paper, documents, instruments, and general intangibles, now owned or hereafter acquired (the "Secured Property") by Debtor.

7. Oxford filed a UCC Financing Statement (the "Financing Statement") with the Pennsylvania Department of State on September 27, 2010, at Number 2010092802407, covering collateral of the Debtor, including, *inter alia*, all inventory; all items of machinery, equipment, parts, accessories and attachments; all fixtures, trade fixtures and furniture; all leasehold improvements; and all books, records, invoices, contract rights, chattel paper, documents, instruments, and general intangibles, now owned or hereafter acquired, including but not limited to Pennsylvania Liquor Control Board Restaurant Liquor License No. R-11111 and the proceeds thereof.

8. On September 16, 2011, judgment was entered by confession in favor of Oxford and against Debtor in the amount of $157,144.85 in the Court of Common Pleas of Allegheny County, Pennsylvania at case number GD-10-017459 (the "Judgment").

9. On March 3, 2011, Oxford caused a writ of execution to be issued on the Judgment, and pursuant to such writ of execution the Sheriff of Allegheny County, on March 23, 2011, levied upon the License, and equipment, furniture and fixtures located on the Premises and scheduled a sheriff's sale thereof.

10. On April 8, 2011 Debtor filed the above-captioned case under Chapter 7 of the Bankruptcy Code.

11. On or about May 13, 2011, Oxford filed a Motion for Relief from Automatic Stay in order to enforce its security interest in the Secured Property, including the License.

3

12. On or about May 31, 2011, this Honorable Court granted Oxford relief from stay, permitted Oxford to execute on the License, and directed Oxford to hold the proceeds from the sale of the License in escrow pending further Order of Court.

13. Oxford sold the License for $43,000.00 on October 10, 2011[.]

14. Oxford incurred costs in the amount of $1,234.54 to sell the License.

15. The net proceeds of $41,765.46 are being held in escrow by Pittsburgh Settlement Company, as directed by this Honorable Court's May 31, 2011, Order.

In light of the above-enumerated facts, the Court considers the Complaint, Oxford's Answer, and the briefs filed. The matter is ripe for decision.

## II.    Conclusions of Law

The Complaint is comprised of two counts. The first count sets forth the Plaintiff's claim that Oxford does not have a security interest in the Liquor License by virtue of its security agreement[2] and financing statement. The second count sets forth the Plaintiff's claim that the execution lien obtained by Oxford was a preferential transfer pursuant to 11 U.S.C. §547. The Court will address each count in turn.

Count I

The issue before the Court is whether the security agreement, which encumbers, *inter alia,* "general intangibles," includes the Liquor License notwithstanding the fact that it does not specifically refer to the license or identify it by number. The Plaintiff contends that the only method to encumber a liquor license through a security agreement is to specifically identify the

---

[2] Throughout this Opinion, the Court will refer to Article 30 of the Lease, in which the Debtor granted Oxford a security interest in certain collateral as set forth therein, as the "security agreement."

4

license by number. In this case, Oxford did identify the liquor license by number in the financing statement but failed to do so in the security agreement. The Plaintiff contends that failure to precisely identify the license in the security agreement is a fatal flaw to the creation of a valid lien. For the reasons that follow, this Court concludes that the language used, specifically the term "general intangibles," did create an enforceable security interest in the Liquor License. Furthermore, the security interest was perfected through the filing of the financing statement dated September 27, 2010. Although that financing statement also included the specific description of the Liquor License by license number, the use of the term "general intangibles" without more was sufficient to create a perfected security interest in the license.

As a preliminary matter, this Court examines whether a security interest can be created in a liquor license under Pennsylvania law. Pursuant to the Uniform Commercial Code (U.C.C.), as adopted in Pennsylvania, a "security interest" is defined as "[a]n interest in personal property or fixtures which secures payment or performance of an obligation." *See* 13 Pa. C.S.A. §1201(b)(35). As a liquor license is clearly not a fixture, the question becomes whether it constitutes "personal property." Although previously identified as a privilege, the Pennsylvania Liquor Code now characterizes a liquor license as "a privilege between the board and the licensee. As between the licensee and third parties, the license shall constitute property." 47 P.S. §4-468(d). Therefore, as the license constitutes property, a security interest can be created. *See Pennbank v. GRF, Inc.* (*In re GRF, Inc.*), 119 B.R. 68, 70 (Bankr. W.D. Pa. 1990).

As a security interest in a liquor license is permitted, the Court must next consider whether a liquor license is properly characterized as a general intangible. "General intangibles" are defined as "[a]ny personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment

5

property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction. The term includes payment intangibles and software." 13 Pa. C.S.A. §9102(a). This Court looks to Pennsylvania law to determine whether the Liquor License is a general intangible.

Pennsylvania case law suggests that a liquor license is properly characterized as a general intangible. In *Tomb v. Lavalle*, the Superior Court of Pennsylvania addressed whether a liquor license constitutes "goods" within article 2 of the U.C.C. and the applicability of the statute of frauds regarding a sale of such a license. *See* 444 A.2d 666, 668 (Pa. Super. Ct. 1981). In holding that the liquor license did not qualify as "goods," the court noted that "it appears that whenever, it has been necessary to characterize a liquor license under the Uniform Commercial Code, the license has been held to be a general intangible." *Id.* at 667-68. In the case of *City of Harrisburg v. Kanoff* (*In re Kanoff*), the bankruptcy court relied upon this statement of the Superior Court in *Tomb v. Lavalle* to conclude that a liquor license is a general intangible. *See Kanoff*, 408 B.R. 53, 58-59 (Bankr. M.D. Pa. 2009). As in *Kanoff*, this Court is unconvinced that the Pennsylvania Supreme Court would come to a different conclusion than that of the Superior Court in *Tomb v. Lavalle. See Kanoff*, 408 B.R. at 58-59. Thus, this Court finds that, under Pennsylvania law, a liquor license is included within the category of general intangibles.[3]

As a security interest in a liquor license is permitted and a liquor license is a general intangible, the Court must consider whether the use of the description "general intangibles" alone

---

[3] The Plaintiff contends that a liquor license is not a "general intangible" and cites to *In re Chris-Don, Inc.,* 367 F.Supp.2d 696 (D.N.J. 2005), in support of this contention. However, *Chris-Don* is distinguishable as the court's determination in that case was based upon the application of New Jersey state law. *Id.* at 699-701. Unlike Pennsylvania, which characterizes a liquor license as property as between the licensee and third parties, New Jersey does not characterize a liquor license as property and expressly prevents by statute the use of a liquor license as collateral for a loan. *Id.* at 698-701. In order for a liquor license to be a "general intangible," it must first be found to be personal property. *Id.* at 699. This distinction makes the conclusion in *Chris-Don* inapplicable to this case.

6

in a security agreement is sufficiently specific to encompass a liquor license. Among the requirements for the creation of an enforceable security interest against the Debtor and third parties with respect to the collateral, the Debtor must have authenticated a security agreement which describes the collateral. *See* 13 Pa. C.S.A. §9203(b)(3)(i). The description of the collateral is the issue at the heart of this proceeding.

It is noteworthy that no controlling law on point has been identified regarding the issue presented. Generally, however, "a description of personal . . . property is sufficient, *whether or not it is specific*, if it reasonably identifies what is described." *See* 13 Pa. C.S.A. §9108(a) (emphasis added). A reasonable identification can be accomplished by identifying the collateral by, *inter alia*, category. *See* 13 Pa. C.S.A. §9108(b)(2). As stated in the U.C.C. comments to this section, "'General intangible' is the residual category of personal property, including things in action, that is not included in the other defined types of collateral." *See* Comment 5(d). Although a liquor license is a general intangible, the category of general intangibles is a catch-all category creating some doubt as to the sufficiency of the category alone as a description. However, it is noteworthy that while the statute sets forth (1) the types of "supergeneric" descriptions that are insufficient and (2) descriptions by "type" which are insufficient, no qualification regarding the general intangibles category is stated. *See* 13 Pa. C.S.A. §9108(c),(e). Furthermore, the U.C.C. comments provide, "This section rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called "serial number" test)." *See* Comment 2. As the license itself, i.e. the privilege granted, is the property subject to the security interest and is a "general intangible," the inclusion of the license number is simply another identifier.[4] Requiring the

---

[4] Although addressing taxicab licenses, the reasoning of the court in *Standard Acceptance Co. v. Lewis Cab Co.*, is instructive and particularly persuasive. *See Standard Acceptance*, No. 92 C 7072, 1995 U.S. Dist. LEXIS 2273, 1995 WL 86593 (N.D. Ill. Feb. 27, 1995). In that case, the

inclusion of the license number appears to be more in line with the rejected "serial number" test. The Plaintiff has cited to no case Pennsylvania case law requiring the level of specificity she urges this Court to require in this case.

Also, the analysis in *First Pennsylvania Bank, N.A. v. Wildwood Clam Co.,* 535 F. Supp. 266 (E.D. Pa. 1982), is persuasive. In that case, the court was presented with the question of whether a creditor had an enforceable security interest in a clamming license and its proceeds where the creditor possessed "a security interest in, among other items, general intangibles 'whether now owned or hereafter acquired, together with all replacements therefor or proceeds.'" *Id.* at 267. As no Pennsylvania case law addressing commercial clamming licenses was offered by the parties or discovered by the court, the court compared the clamming license to a liquor license, which it noted has been classified as a general intangible. *Id.* at 268 (citing to *Tomb v. Lavalle*, 444 A.2d 666 (Pa. Super. Ct. 1981)). Applying the comparison, the court held that the clamming license was a general intangible subject to the security interest. *Wildwood*, 535 F.Supp. at 268.

Although this Court finds that the reference to "general intangibles" in the security agreement is sufficient to encompass the Liquor License, the Plaintiff raises strong public policy arguments in support of requiring a more detailed description. This Court notes that it is clearly in the best interest of creditors to specifically identify liquor licenses by number in security agreements and financing statements where it is their intent that such licenses are to be included

---

court distinguished between the license itself, i.e. the permission to take certain action, and the written documentation evidencing the permission granted. *See* 1995 U.S. Dist. LEXIS 2273 at *12, 1995 WL 86593 at *4. The court noted that the license was the right granted by the city to operate a taxicab as opposed to the physical evidence of the right, which in that case were a medallion and "hard card." *See* 1995 U.S. Dist. LEXIS 2273 at *14, 1995 WL 86593 at *4. Although the court was not faced with determining the sufficiency of the description, the logic is applicable to the facts presented in this case.

8

as collateral and to remove any doubt and need for future litigation. Nonetheless, this Court must resolve this action as it predicts the Pennsylvania Supreme Court would rule on these facts. Therefore, notwithstanding policy considerations to the contrary, the description in the security agreement was adequate.

In addition the Court notes that the security interest was perfected pursuant to 13 Pa.C.S.A. §§9310(a) and 9502 through the filing of the financing statement dated September 27, 2010, which described the collateral. Pursuant to 13 Pa.C.S.A. §9504, as the sufficiency of the description of collateral in a financing statement is analyzed by the same standards set forth in §9108, discussed *supra*, the same analysis applied by this Court to the security agreement applies to the financing statement. Although the financing statement did specifically identify the Liquor License by number, the inclusion of the term "general intangibles" without more in both the security agreement and the financing statement sufficiently encompassed the license. Accordingly, Oxford possessed a perfected security interest in the license.

Count II

As to the second count of the Complaint, the Court can quickly dispense with the allegation of a preferential transfer. The Plaintiff asserts that, to the extent Oxford claims a lien in the Liquor License by virtue of the execution, the claim fails under the §547 avoidance power. The second count of the Complaint is only of significance if the Court had concluded that Oxford did not have a secured claim pursuant to the security agreement. In other words, by asserting that a preferential transfer occurred, the Plaintiff sought to avoid a result where Oxford was determined *not* to have a security interest in the Liquor License by way of the security agreement but Oxford nonetheless was determined to have obtained a lien by virtue of the execution prior to

9

the filing of the bankruptcy case. That is, the Plaintiff sought a determination by this Court of whether the execution provided Oxford with an alternative theory to assert a lien on the license.

The Court has now determined that Oxford held a valid perfected security interest in the Liquor License at the time the case was filed. Of the requisite elements to establish a preferential transfer pursuant to 11 U.S.C. §547, the Plaintiff did not establish that the execution lien was a "transfer of an interest of the debtor in property (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." *See* 11 U.S.C. §547(b)(5). Thus, the Plaintiff has failed to establish a preferential transfer.

Proceeds from the Sale of the Liquor License

As a final matter, the Court previously granted Oxford's motion for relief from stay, permitting Oxford to execute on the Liquor License with the qualification that Oxford was to hold the proceeds of the sale in escrow pending further Order of Court. As the Court has now determined that Oxford held a perfected security interest in the Liquor License, it is entitled to the net proceeds in the amount of $41,765.46, which are currently being held by the Pittsburgh Settlement Company pending further Order of this Court.

**III.    Conclusion**

For the foregoing reasons, this Court finds that the Liquor License is properly characterized as a "general intangible" and use of that category as a description is sufficient to create an enforceable security interest in said license. The security interest was perfected through

the filing of a financing statement. Furthermore, the Plaintiff has not established the elements of a preferential transfer as to the execution lien obtained by Oxford. Therefore, Oxford is entitled to the net proceeds from the sale of said license in the amount of $41,765.46. An appropriate order will be entered.

Date: June 21, 2012                                                    __/s/ Carlota M. Böhm_____
                                                                       Carlota M. Böhm
                                                                       United States Bankruptcy Judge


**CASE ADMINISTRATOR TO MAIL TO:**
   Office of the United States Trustee
   Natalie Lutz Cardiello, Esq., Trustee/Plaintiff
   Donald R. Calaiaro, Esq, Special Counsel to Trustee/Plaintiff
   Oxford Development Company/Grant Street, L.P., Defendant
   Robert L. Murphy, Esq., Counsel to Defendant
   Hilary W. Taylor, Esq., Counsel to Defendant
   Ciprian Ltd., Debtor